993 F.2d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
v.
Andrew L. CARRAWAY, as personal representative of the estate
of Andrew L. Carraway, II, deceased, Plaintiff-Appellant,
v.
L. L. DEBRUHL, in his capacity as the Sheriff of Kershaw
County, Defendant-Appellee.
 No. 92-1665.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 3, 1993
Decided: April 30, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Dennis W. Shedd, District Judge. (CA-90-2574-3-19)
 Mortimer Meyer Weinberg, III, Weinberg, Bbrown& McDougall, Sumter, South Carolina, for Appellant.
 Deborah Lynn Harrison, Richardson, Plowden, Grier & Howser, P.A., Columbia, South Carolina, for Appellee.
 Charles E. Carpenter, Jr., Richardson, Plowden, Grier & Howser, P.A., Columbia, South Carolina; Nancy C. Wicker, Caroline E. Callison, Leventis, Wicker, Callison & Ragsdale, Columbia, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WIDENER and LUTTIG, Circuit Judges, and PAYNE, United States District Court Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Andrew L. Carraway ("Mr. Carraway") is the personal representative of the estate of his deceased son, Andrew L. Carraway, II ("Len Carraway"), who committed suicide while confined in the Kershaw County Detention Center, South Carolina. This action under 42 U.S.C. § 1983 was filed against the Sheriff of Kershaw County, L. L. DeBruhl ("Sheriff DeBruhl"), in his official capacity, seeking damages for the wrongful death of Len Carraway. The district court sustained Sheriff DeBruhl's claim of immunity and dismissed the action with leave to amend. Mr. Carraway subsequently amended the complaint to name Sheriff DeBruhl in his individual capacity.
 
 
 2
 Mr. Carraway contends that Sheriff DeBruhl violated Len Carraway's constitutional rights by failing to: (1) adequately supervise Len Carraway while he was incarcerated in the Kershaw County Jail; (2) adequately train and supervise his deputies and other employees in suicide prevention; and (3) promulgate or implement procedures to safeguard potentially suicidal inmates. The district court granted summary judgment in favor of Sheriff DeBruhl. We affirm.
 
 I.
 
 3
 The material facts are not disputed and are set forth briefly below. On Saturday, October 17, 1987, Len Carraway was arrested by a Kershaw County Deputy Sheriff on a federal warrant charging him with desertion from the United States Navy. He was detained at the Kershaw County Jail awaiting transfer to naval authorities for trial by court-martial. During a visit later that day, Len Carraway's parents noticed red marks around their son's neck. When Mr. Carraway asked his son to explain the presence of those marks, he said they were the result of "playing around" with his shoestrings. Mr. Carraway informed his wife of that explanation but she did not accept it and, in a subsequent conversation, she pressed her son for more information. According to Mrs. Carraway, her son said "I did this" and indicated by gesture that he had pulled the shoestrings around his neck. This upset Mrs. Carraway, who said "Len, please, son, don't do this," to which Len Carraway replied, "Don't worry about me. I'm not going to do anything like this. You don't worry."
 
 
 4
 Not satisfied with this assurance from their son, Mr. and Mrs. Carraway reported these facts to Deputy Sheriff Branham and expressed concern that their son might attempt suicide. Deputy Sheriff Benny DeBruhl ("Deputy DeBruhl"), Sheriff DeBruhl's son, was then informed of the situation. Deputy DeBruhl, who was handling a pending theft investigation involving Len Carraway and who knew the Carraway family well, visited Len Carraway and specifically asked him whether he had tried to kill himself. Len Carraway denied the suicide attempt, assured Deputy DeBruhl that "he wouldn't try to hurt himself," and said that the marks on his neck were the result of rubbing a "blanket back and forth on his neck."
 
 
 5
 Deputy DeBruhl passed this information to the jail matron, who said that Len Carraway also had told her that the red marks were caused by a coarse blanket. The matron assured Deputy DeBruhl that the jail staff was watching Len Carraway closely. After leaving Len Carraway at the jail, Deputy DeBruhl reported the incident to Sheriff DeBruhl, who instructed him to inform the staff at the Kershaw County Jail about the alleged suicide attempt. Deputy DeBruhl replied that he had already informed the staff of the situation.
 
 
 6
 Mr. and Mrs. Carraway visited their son again on Sunday, October 18, and he seemed normal to them during that visit. However, following a visit two days later on Tuesday, October 20, the Carraways again expressed their concerns about their son to the jail administrator, Bobby Mickle, and to Deputy Sheriff Branham. Mickle reassured the Carraways that their son was under observation. Len Carraway committed suicide by hanging himself in his cell on Thursday, October 22, shortly after a regularly scheduled check of the inmates.
 
 
 7
 It also is undisputed that before 1987, in accord with S.C. Code Ann. § 24-5-12, the Kershaw County Sheriff had devolved official responsibility for operation of the county jail to the governing body of Kershaw County. The jail was housed in facilities independent of the Sheriff's office, and was operated by a jail administrator and staff employed and controlled by the Kershaw County Manager and the Kershaw County Council.
 
 II.
 
 8
 The resolution of this appeal depends upon the application of South Carolina statutes which address the responsibility of county sheriffs for the operation of county jails. The dispositive statutes have not been interpreted by the Supreme Court of South Carolina under facts such as those presented by this case. We find that the district court correctly applied the plain language of the statutes in granting summary judgment.
 
 
 9
 The office of County Sheriff is an elected office created by Article V, § 24 of the South Carolina Constitution. S.C. Code Ann. § 24-5-10 gives the County Sheriff custody of the county jail, makes him liable for the jailer's conduct, and imposes on him the duty to provide for the safety of persons detained in the jails:
 
 
 10
 The sheriff shall have custody of the jail in his county and, if he appoint a jailer to keep it, the sheriff shall be liable for such jailer and the sheriff or jailer shall receive and safely keep in prison any person delivered or committed to either of them, according to law.
 
 
 11
 S.C. Code Ann. § 24-5-10 (1976). However, another state statute expressly permits the county sheriff to devolve that responsibility to the county's governing body:
 
 
 12
 Notwithstanding the provisions of § 24-5-10 or any other provision of law, the sheriff of any county may, upon approval of the governing body of the county, devolve all of his powers and duties relating to the custody of the county jail and the appointment of a jailer on the governing body of the county....
 
 
 13
 S.C. Code Ann. § 24-5-12 (1976). As explained above, it is undisputed that the Sheriff of Kershaw County had invoked this statute before 1987 and that thereafter the county government had assumed the sheriff's responsibilities for operation of the county jail.
 
 
 14
 Mr. Carraway asserts, however, that S.C. Code Ann.s 23-15-50 imposes on the county sheriff a non-delegable duty to keep prisoners in safe custody. § 24-15-50 provides:
 
 
 15
 The sheriff or his deputy shall arrest all persons against whom process for that purpose shall issue from any competent authority commanding such person to be taken into custody or requiring him to give bond, with security. If the party so arrested, being entitled to bail, shall give it or shall give the bond with security required, such person shall be released; and if not, he shall be kept in custody until discharged from confinement according to law.
 
 
 16
 Although Mr. Carraway concedes that § 24-5-12 permits a county sheriff to devolve custody of the county jails and their administration to the county government, he contends that it does not allow the sheriff to devolve the duty imposed on him by § 24-5-50 to ensure the safety of the prisoners.
 
 
 17
 That argument is premised on an untenable construction of the statute on which it is based. By its clear terms, § 24-5-50 confers the power of arrest upon sheriffs and requires them to keep persons lawfully arrested in confinement until released on bail or otherwise discharged according to law. However, just as clearly,s 24-5-50 does not address, much less impose on sheriffs, the duty to provide for the safety of persons confined in the jails. That responsibility is addressed explicitly by § 24-5-10.
 
 
 18
 More importantly, the interpretation of § 24-5-50 advanced by Mr. Carraway is at odds with the plain language of § 24-5-12, which permits the sheriff to "devolve all of his powers and duties relating to the custody of the county jail and the appointment of the jailer," to the county government "notwithstanding the provisions of § 24-5-10 or any other provision of law." S.C. Code Ann. § 24-5-12 (emphasis added). The phrase "all of his powers and duties" as used in § 24-512 defines what may be devolved to the county government and it includes the duty to "safely keep in prison any person delivered" to the sheriff which is imposed by § 24-5-10.
 
 
 19
 The district court accorded the applicable statutes the construction required by their plain meaning and correctly held that, on the undisputed facts, the sheriff of Kershaw County lawfully was entitled to, and in fact did, devolve supervisory authority over the jail and its personnel to the county government before Len Carraway's detention and subsequent suicide. This, as a matter of law, precludes recovery on any theory advanced in the complaint. We therefore conclude that it is unnecessary to reach the alternative basis for the grant of summary judgment.*
 
 
 20
 Accordingly, the judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 *
 Although it was unnecessary for the district court to reach this issue given its correct construction of the applicable statutes, Mr. Carraway also contends that there existed a genuine dispute of material fact whether, notwithstanding the statutory devolution of control over the county jail to the governing body of the county, Sheriff DeBruhl exercised actual control over the jail. This argument is based solely on the theory that, when Mr. and Mrs. Carraway visited their son in jail, they communicated with the sheriff's deputies for authorization. The record reveals, however, that in those instances the authorization to visit in fact was given by the county jail administrator and that the involvement of the deputy sheriffs simply was an accommodation to the Carraways as citizens of the county. Accordingly, the district court correctly concluded that "at most, this evidence establishes that the defendant, as Sheriff, as well as his deputies, were allowed free access to persons detained in the jail."